On the Merits.
[2] The defendant’s allegation about possession, if sustained, must be followed by a decree that plaintiff is not sufficiently in possession to compel defendant to assert her title to the property or disclaim ownership.
The testimony regarding possession is conflicting. We will refer to it only as regards the right to sue. It is not our purpose in the discussion and in our decree to go beyond the mere right to be heard in a petitory action.
*543 'Plaintiff bought land from Robert Kay on the 9th day of July, 1910, described as square bounded by Marks, Leonidas, Joliet, and Nineteenth (Pear) streets.
In the deed of purchase it is declared that it is the property which was acquired by yendor, Kay from Ed. Hughes in December, 1836.
As a basis to establish sufficient possession to maintain this suit, the alleged title is considered.
That plaintiff has some interest to the property whether legal or illegal, we will not decide. It can well be said that it is not a trespasser who invokes possession in order to maintain it, but one who owns a title which confers at least civil possession to the property.
No question that plaintiff has sought to give full effect to its civil possession under the deed by going on the ground through its agents and employés and erecting a wire fence around the land.
The building of a fence in 1911 is made evident by receipts of those who furnished the materials for the fence, and by testimony of the two workmen who used the materials in putting up the fence.
It seems that the two workmen who put up the fence erred in their attempt to trace the line of the fence with the surveyor’s line drawn on blueprint, which was in evidence. Learned counsel succeeded in weakening the testimony by showing that there was considerable variance between the testimony and the description of the land in blueprint of a survey.
We, for the moment, concede the weakness of this testimony at this point, yet we have not found it possible to arrive at the conclusion that no line of fence had been put up along the boundary lines of the land, or lines which they understood were boundaries. In other words; these men constructed a fence; if they erred and did not follow the lines closely, plaintiff could still stand in • judgment in this jactitation suit. Witness for defendant testified that there was a fence, that it was an old fence, that the wire had rusted, and that part of said fence was broken ; conceding all this from the point of view of defendant’s testimony, it remains that there was, to say the least, serious attempt made to put up the fence. The testimony of plaintiff is positive that they did put up the fence as alleged, that immediately afterward the property was assessed in its name and it paid the taxes. Plaintiff sought to sell the land or let it, but no one would buy or lease. The testimony shows that this land is low and swampy, of little value at the time, and doubtless, for that reason, neither defendant or plaintiff .gave very close attention to what each thought was its right to the land.
No timely attempt, was ’ ever made by defendant to inclose the land or take possession. We use the word timely because defendant’s first attempt to go into possession was made after this suit had been instituted. A former claimant to land, in the square before mentioned, was a witness for defendant. He testified that his claims were for nine lots, which he had fenced in 1904 with a two-strand wire fence; he stated that it had not been surveyed, an error had been committed; the land to which he laid claim as owner was on Pear street and not on Marks street, as he had at first thought.
The wire fence in the rear of the lots was 120 feet from AB, according to the copy of a plat in evidence which is attached for reference. He added that the line from O to D and from E to A B was' built by him. We have not found that the map included the whole tract.
Said claimant of land said that he never had it repaired because he was informed *545 that defendant claimed the property. He subsequently made a trade with Mr. Fell-man, and said to him:
“Take whatever fence I have on your lot and I will take your fence and we made an exchange.”
This witness states that no one can say anything “about a fence.” Illustrating, he said:
“Mr. Wall and I built in the third district $700 worth of fence, and I do not think we have got $100 worth of fence left. You cannot tell how long a fence will stand or last.”'
The defendant will have it that this old fence was built in 1904.
This witness did not remember definitely about these fences. He was not prepared to swear that the fence remained standing any length of time. The position of defendant, in argument, which she seeks to sustain with the testimony of this witness, was that plaintiff did not build a new fence, that it only repaired an old fence, which defendant claims was hers by exchange with Mr. Howcott.
There are several reasons asserted against defendant: First, the witness is uncertain about an existing fence, particularly some seven years after the fence had been built; second, the ground was low and damp, and the fence in that time may have become rusty, may have fallen down, and dwindled away to nothing. In view ofw the uncertainty created by the testimony, it is not possible to successfully charge plaintiff’s agents and employés of having appropriated a fence or part of a fence. There remained very little, if anything, to appropriate and repair of the old fence of 1904.
According to this witness, defendant did not claim the lots fronting on Marks street, but claimed the lots on Pear street, which she had inclosed. Another witness for defendant, one who directed the building of the fence for defendant, testified that he inclosed two key lots on Leonidas street and the lots on Pear street, and two key lots on Joliet street. This description does not include all the lands of which plaintiff claims the possession, for the deed of sale under which plaintiff claims possession includes, (1) lot 22, forming the corner of Marks and Jefferson, “now Joliet” streets, and lot 13, fronting part of this square. If only part of the land is in possession of plaintiff, he would have the right to maintain his action.
From the further testimony of defendant’s witnesses, the wire fence on the place fronting on Pear street was in bad condition. The testimony shows that the fence along the line AB, which plaintiff alleges it had constructed, was in good condition; it was constructed, plaintiff’s witness testified, in 1911.
The thought occurs at this time, if there was not an adverse fence on the land, why did defendant, after the suit had been instituted, cause fencing along the property to be destroyed.
It must have been the fence of plaintiff, as no other fence shows adverse possession except that inclosed by its wire. The testimony of the civil engineer who surveyed the land for defendant on the 1st of February, 1912, attracted our attention. His competency and integrity in this closely contested suit are not questioned in the least. His testimony is clear, direct. He states that the portion of the fence on Marks street was in fair condition; the portion in the rear of the lot fronting on Marks street was also in a fair condition; the portion of the side toward Joliet street was in bad condition, and the portion on Leonidas street was down, almost the full length was destroyed.
He said that the fence in the rear of the lots fronting on Marks street was better built than the rest of the fence; it was straighter and in a better condition. The witness referred to above as having made the exchange with defendant swore as to this fence, as to leave nothing - warranting the conclusion that it was the fence he had put *547 up. Taking this testimony with that of other witness warrants the conclusion that it was not defendant’s fence.
In answer to a question, he said that he found a wire fence encircling the ten lots, with the exception of the wire fence off the line from Joliet street.
A dairyman whose home is near by the land said of a fence along one of the sides that it was in bad condition. Still this proves that there was a standing fence.
The character of the fence is not of the first importance, if it shows that it is an inclosure. The witness said' that, when he went to live on the place, about one year three months before the suit was brought, there was a fence around the property.
We do not take it that this was the fence of W. H. Howcott, the former owner.
■ It follows that this is the fence acquired by defendant in exchange as before mentioned.
These were the questions propounded to witness and answered as follows:
“Q. Now it has been testified here that a survey of the property was made in February of this year. Now, since February, this year, what has become of the fence that was around the property?
“A. This old fence?
“Q. Yes; the fence that was there when you came there in December?
“A. It was torn down.
“Q. By whom was it torn down?
“A. Mr. Fellman there, I guess, had some one hired to throw it down.
“Q. You mean to say that, during the pend-ency of this suit, Mr. Fellman has had this fence torn down?
“A. Yes, sir.”
Now we have not found that defendant ever had her own. fence thrown down. On the contrary, after this suit had been instituted, another fence was constructed in place of the old one, in order to assert her ownership. At another time, while testifying to the-, the following was said:
“Let me explain this to you. There is Marks street, here is Joliet street, and here is Leonidas street. This is Pear street and the new basin. The survey shows that the fence that you found around the property when you came there in December was off the line on Joliet street — off at the front marked O D — on the Waddill survey. Now, when the fence around the rest of that square was torn down, this portion of fence from C to D was left standing, wasn’t it?
“A. It was all torn down.”
This was not the fence of Mr. Fellman. No one else claimed to have owned the fence.
But it is said that it was a fence that plaintiff had repaired.
The question arises between “repairs” and “construction,” without evidence to solve it for defendant.
In. the first it was not shown that it was repaired so as to make it W. H. Howcott’s fence, the assessed former owner, nor defendant’s.
In that fence deal, which resulted in an exchange because of error in regard to the land itself, the fence of defendant had been in consequence, built on Mr. Howcott’s land and Howcott’s fence on defendant’s land; the former never found that any of defendant’s fence received in exchange remained, nor does the evidence show that in this respect defendant was more fortunate. So that, when her husband had the fence torn down, we do not take it that it was the Howcott fence.
Plaintiff placed the property in the hands of a real estate agent to sell it for him, and this agent placed “posters” on the property “For Sale.”
The defendant endeavored to obtain possession by having the fence taken down. As relates to equity, we will state little is said as relates to claim for possession; one, the defendant, claims under a tax title; the other, plaintiff, we have noted, claims under a deed.
In the judgment appealed from, the court allowed $150 fee of attorney, although not specially claimed.
In this contention for possession we will not allow fee of attorney.
*549 It is ordered, adjudged, and decreed that judgment appealed from is amended by striking the fee of attorney allowed; after amendment, the judgment is affirmed, at appellee’s cost on appeal.
PROVOSTY, J., dissents.